### DODGE v. ALLISON et al.

(Circuit Court of Appeals, Third Circuit. June 14, 1926.)

No. 3370.

1. **Courts ☞406(1)—Verdict, supported by substantial evidence, is not reviewable by Circuit Court of Appeals (Rev. St. § 1011 [Comp. St. § 1672]).**

Where the questions of fact in a case are correctly submitted to the jury on conflicting evidence, and there is substantial evidence to support their findings, their verdict cannot be reversed by the Circuit Court of Appeals.

2. **Brokers ☞49(1)—Under contract for commissions on sale, commissions are earned when sale is effected.**

Under a contract for commissions on a sale, the commissions are earned as soon as a sale is effected, though the time of payment may be postponed until after delivery.

3. **Brokers ☞74.**

A principal cannot escape paying commissions on a contract by assigning the contract to some one else.

Buffington, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of New Jersey; Wm. N. Runyon, Judge.

Action at law by Minnie E. Allison and Audrey E. Allison, Executrices of J. Wesley Allison, deceased, against M. Hartley Dodge. Judgment for plaintiffs, and defendant brings error. Affirmed.

Robert H. McCarter, of Newark, N. J., and Chauncey B. Garver, of New York City, for plaintiff in error.

Riker & Riker, of Newark, N. J. (Jesse W. Johnson, of Brooklyn, N. Y., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This case has been tried three times. At the first trial

the district court entered a judgment of nonsuit which, on review, this court reversed. Allison v. Dodge (C. C. A.) 287 F. 621. At the second trial the plaintiff had a verdict which the defendant thought was wrong and the plaintiff thought was inadequate. The defendant moved to set it aside and the plaintiff consented. The third trial resulted in a verdict and judgment for the plaintiff in the sum of $174,638.90. The defendant, by this writ, has brought the judgment here for review on five assignments of error which, when compressed, raise two questions: (a) Whether the trial court erred in refusing the defendant's motion for a directed verdict; and (b) whether it erred in not charging the defendant's eighth request to the effect that the plaintiff cannot, in any event, recover commissions for sale of brass shell cases to the British Government beyond the number delivered by Dodge, as distinguished from the number later delivered by his successor, the Remington Arms-Union Metallic Cartridge Company.

Doubtless because of many questions from the bench, the case was argued by both sides as though it were being tried to a jury. It has therefore become important to determine on the threshold of this discussion just what we have to do. It is clear that we do not have to decide the case. It is one of fact to be tried to and decided by a jury. We have only to determine whether, specifically, the defendant's eighth request should, in the circumstances, have been charged, and, generally, whether the case involved controverted issues of fact with enough evidence on both sides to sustain a decision either way and, accordingly, whether there was enough evidence for the jury to decide the way they did.

Although there was more evidence introduced at the third trial than at the first, we shall refer to and rely on the statement of the case we made in our opinion when reviewing the judgment of nonsuit (287 F. 621) which discloses the main facts developed at the third trial, varied and expanded in particulars we shall state as we proceed. The questions subsidiary yet vital to those raised by the two assignments of error, succinctly stated by the court in its charge, were five, the first being:

[1] What was the contract between Allison and Dodge?

Dodge does not deny there was a contract. It is certain there was one. Equally certain, it was partly in writing and partly oral, and concerned services which Allison,

at Dodge's request, undertook to perform for him in connection with procuring British contracts for brass shell cases, for which Dodge promised Allison "a commission of fifteen cents each on the brass cases 18–pdr. as these are shipped and paid for." Also there is no doubt that Allison's contemplated services extended to things he was to do both in America and in England. The only written part of the contract was the quoted stipulation as to the amount and payment of commissions. All else was oral.

The thing which Allison engaged to do in America was to procure from the Quebec Arsenal blue prints, specifications and a sample of English shell cases to enable Dodge to learn their requirements, estimate their cost, and make machinery for their construction in the event of getting a contract. According to some evidence Allison procured what Dodge asked for and made delivery to him. According to other evidence the things Dodge asked for and Allison delivered had, a couple of weeks before and unknown to all parties, been superseded by other blue prints and specifications involving altered dimensions which made those obtained obsolete. At the trial Dodge (speaking through witnesses) said Allison did not obtain what he wanted. Allison said, even so, he obtained precisely what Dodge asked for and what he contracted to procure and deliver. Clearly the jury alone could determine which of these opposing contentions was within the terms of the contract. As there was evidence to sustain the plaintiff's contention, the jury's finding for him was valid and it is final.

In respect to the services to be performed in England, there is no evidence that the parties contemplated that Allison, to earn commissions, must *secure* munition contracts. There is evidence that the defendant, having requested Allison to represent his concern in England, promised the commissions for his *aid* in getting contracts. That, Allison claimed, was the limit of his undertaking, and there was evidence enough to sustain the jury's finding of that fact. Thus, it appears, the question, what was the contract, was properly submitted and on sufficient evidence validly decided by the jury. Evans v. Ely (C. C. A.) 13 F.(2d) 62.

The court next submitted to the jury the question: Did Allison perform his part of the contract?

We shall not repeat our statement of the services to be performed by him in America. It will be enough to say that on ample evidence the jury found that he did perform them. As to performance in England, the question is closer, involving representations of the defendant's facilities for manufacturing various munitions in volume made by Allison to Lord Kitchener, after a personal introduction by Sir Sam Hughes, and to other high officials of the British Government having to do with letting munition contracts, in a long line as he was sent by one to another, and, being affected by the end which the defendant put to his negotiations for a 3,000,000 case contract by cabling him to stop, stating that "our capacity field cases entirely taken" when, if the evidence be true, the capacity was not taken, for the defendant was then, or a few days later, negotiating through other channels for the large English contract for cases at higher prices, later secured and now concerned in this suit.

Whether, on the question of performance, Allison, in rendering the service thus begun and ended, gave any help in securing the munition contract was the capital question tried to the jury. There was evidence both ways. Therefore the verdict for the plaintiff is valid, unless, indeed, the contract for commissions related not to the contract obtained but to an altogether different contract then under negotiation.

As to the latter contract, it appears that about a week before Allison went abroad at the request of the defendant to represent him in negotiating English munition contracts, Sir Sam Hughes, Minister of Munitions and Defense of the Dominion of Canada, left for England, having in hand negotiations for a contract for 200,000 shell cases for the British Government. Sir Sam Hughes was dealing with Sir Stanley Von Donop, England's Chief of Ordnance. He was trying to get this contract for the defendant, but three or four days after Allison had arrived in England, the transaction fell through and Hughes cabled the defendant to that effect. At the argument on this writ of error and in his supplemental brief filed after the argument, the defendant vigorously maintained that his contract with Allison related to commissions on the 200,000 case contract for which Hughes was negotiating and not to commissions on the contract he later obtained from the British Government on which Allison claimed commissions in this suit, and that as no contract was secured by Hughes, no commissions were earned by Allison.

This is an altogether new phase the defendant has given to the litigation; one not intimated at the first, second or third trials; not referred to by counsel in his opening to the jury at the last trial nor in his motion

for a directed verdict at its conclusion; nor was it included in any point submitted to the court for instructions to the jury; nor when the court charged that this action was brought for commissions on shells actually furnished the British Government did the defendant note an exception; nor, finally, is there any assignment of error in respect to the matter. Theretofore the defense had been that Allison did nothing, or what he did was of no value. However, the court left to the jury the question what was the contract and, as it happened, submitted the question in a manner that the jury might have found the contract related to the 200,000 cases, though without directing their attention to that aspect of the controversy, for at that time it had not been raised. Similarly, the jury might have found, as they did, that the contract between the parties related not to the 200,000 cases but to the aid which Allison gave the defendant in obtaining the other contract. As the evidence may conceivably have been sufficient to sustain a finding for the defendant and as it certainly was sufficient to sustain a finding for the plaintiff, it is, of course, beyond the power of this court to set aside the verdict even if we thought the jury were wrong in resolving the testimony in the way they did.

Coming to the third question—was the contract invalid as against public policy under the rule of the Oscanyan case—we merely say that the court submitted that law to the jury in strict conformity with our interpretation and with our instruction in respect to its alternative characteristic, announced in our opinion reported at 287 F. 621. Therefore it committed no error in law and the jury committed no error in fact for the evidence was sufficient to sustain its fact finding on that issue.

The next question—the fourth—is, whether Allison had a connection with the Canadian or British Government which authorized him to make contracts for one or the other and which, if made, avoided his contract with the defendant and deprived him of the right to claim commissions. In other words, did he represent as agent both the buyer and the seller? As there was evidence on both sides of this question and enough to sustain the jury's verdict on the plaintiff's side, there is nothing for this court to do.

The fifth and last question is whether the verdict should have been limited to commissions on cases delivered by Dodge or should have been extended to cases later delivered by his corporation—the question raised by the assignment specifying error in the court's refusal to charge the defendant's eighth request.

[2, 3] Dodge's agreement with Allison was for payment of a fifteen cent commission on brass shell cases when shipped and paid for. Later Dodge obtained the contract with the British Government for an unlimited number of cases and Allison is suing for commission on the 214,800 which Dodge himself shipped and for which he was paid and on 582,638 shipped by and for which payment was made to the corporation which Dodge, in the meantime, had organized and from which he received $50,000,000 of stock in return for his business including the British contract in question. While it is altogether possible that the corporation might not be liable to Allison, it is certain that Dodge (assuming his liability on the contract in all other respects) remained liable to Allison for commissions on all cases delivered and paid for, on the principles of law that under a contract for commissions a party has earned his commission as soon as the sale is effected although the time of payment may be postponed until after delivery, and that a principal cannot escape paying commissions by assigning the contract to someone else. Metz v. Miller (Sup.) 113 N. Y. S. 527; 9 Corpus Juris 605.

We think the trial court committed no error in leaving the question to the jury; yet if it did, it was not prejudicial error because, had the court construed the contract, it would of necessity have had to give it the construction which ultimately the jury itself gave it.

The judgment below is affirmed.

BUFFINGTON, Circuit Judge (dissenting). When this case was here before, 287 F. 621, the proofs made, and the absence of proofs lacking, left the case in such shape, as allowed the jury to find that the work for which plaintiff claimed commissions was done under the written contract between the parties, and we properly reversed the case on the showing there made. But on the retrial the additional proof, given in evidence for plaintiff, shows both that the work done for which commissions were claimed was not done under the written contract to pay commissions, and also that plaintiff's decedent had no part in securing that work for the defendant. As, in my judgment, the record shows no contract ground for sustaining the present verdict, I now note my dissent.